## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Criminal No.** |
| **v.** | : | |
| | : | |
| **RICHARD GRAHAM FOOTE** | : | **VIOLATIONS:** |
| **O'DONOGHUE (also known as** | : | |
| **GRAHAM O'DONOGHUE),** | : | |
| | : | |
| **Defendant.** | : | **26 U.S.C. § 7201 (Tax Evasion)** |
| | : | **26 U.S.C. § 7206(1) (Subscribing to** |
| | : | **False Returns)** |
| | : | **18 U.S.C. § 1001 (False Statements)** |
| | : | |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates and at the approximate times stated below:

### Introduction

1.    RICHARD GRAHAM FOOTE O'DONOGHUE ("Defendant"), was a United States citizen and an attorney. Starting in 2011 and continuing to the present, Defendant lived outside the United States. His last known residence in the United States was in the District of Columbia.

2.    The Internal Revenue Service ("IRS") was an agency within the U.S. Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

3.    As a U.S. citizen, when Defendant received income above a certain threshold for any year, he had an obligation to report his worldwide income to the IRS and pay any resulting income taxes.

2

Defendant's Employment and Income

4.      From 2011 to mid-2013, Defendant and his wife lived in London, United Kingdom.

5.      In 2012 and 2013, Defendant made hundreds of thousands of dollars working as an independent consultant for non-U.S. businesses.  One of the businesses Defendant consulted for was a United States Department of Defense contractor ("Company-1"), which was then based in Dubai, United Arab Emirates.  The other businesses were based in the United Kingdom, Switzerland, and other countries.

6.      Defendant submitted invoices to the businesses requesting payment for his independent consulting work.  Defendant requested, and received, payment by wire into his personal bank accounts.  No U.S. taxes were withheld or paid over to the IRS from the payments made to Defendant.

7.      In mid-2013, Defendant became Chief Executive Officer ("CEO") of Company-1. He and his family relocated to Dubai.  As CEO, Defendant received regular salary payments in excess of $40,000 per month.  Company-1 also paid for Defendant's relocation expenses, including pet transportation, visas for family childcare staff, and shipping costs.  While he was CEO, Company-1 also paid several of Defendant's ongoing expenses, including renting a luxury villa for Defendant's family and paying for utilities, car and driver, and travel insurance. Defendant also received large lump sum bonus payments.

8.      As CEO of Company-1, Defendant had a corporate credit card.  Throughout his tenure at Company-1, Defendant used his corporate credit card for personal purchases, including meals and alcohol for Defendant and his associates.

9.      In early 2015, Company-1 representatives terminated Defendant's employment and attempted to negotiate a severance agreement with Defendant.

10.     In early February 2015, Company-1 paid Defendant a $684,226 severance payment by wire to Defendant's personal bank account. Despite having received this payment, Defendant refused to sign a severance agreement.

11.     Defendant made hundreds of thousands of dollars of income each year from 2012 through 2015. During those years, he made periodic estimated payments to the IRS, but failed to timely file his federal individual income tax returns for tax years 2012, 2013, and 2014.

Defendant's Late-Filed False Tax Returns

12.     In June 2016, Defendant engaged a U.S. national residing in Serbia and working as a tax preparer ("Tax Preparer-1"), to prepare U.S. Individual Income Tax Returns, Forms 1040 ("Forms 1040"), for tax years 2012 to 2015. Defendant knew he had a duty to report accurate information on his Forms 1040, but intentionally provided false information to Tax Preparer-1.

13.     Defendant provided false information to Tax Preparer-1 about, among other things, the amounts and types of income Defendant received each year from 2012 to 2015. Specifically, Defendant told Tax Preparer-1 about only a portion of his independent consulting income in 2012 and 2013. Defendant told Tax Preparer-1 that he was a "general manager"— rather than CEO—at Company-1 and concealed the expenses Company-1 had paid on his behalf in Dubai. Defendant concealed a significant portion of the compensation and bonuses he received from Company-1 in 2013, 2014, and 2015. In addition, Defendant mischaracterized the nature of the lump sum severance payment he received from Company-1 in 2015 and told Tax Preparer-1 that he made only $500,000 in wages from Company-1 in 2015, when in fact he made

4

one month of salary (more than $40,000) plus the $684,226 severance payment. As a result,
each of the Forms 1040 for 2012 through 2015 underreported Defendant's total taxable income
and underreported the amount of tax he owed.

14.      On or about the dates listed below, Defendant caused Tax Preparer-1 to file and
attempt to file the 2012 through 2015 false returns with the IRS. Because Defendant had
previously made estimated payments to the IRS, the false information reported in the Forms
1040 made it appear that Defendant was entitled to refunds from the IRS. Specifically,
Defendant requested refunds as follows:

| Tax Year | Approximate Attempted Filing Date | Refund Requested |
|---|---|---|
| 2012 | June 15, 2016 | $ 88,759 |
| 2013 | October 17, 2016 | $ 50,328 |
| 2014 | October 17, 2016 | $108,371 |
| 2015 | October 17, 2016 | $      0 |
| **TOTAL** | | **$247,458** |

15.      The IRS paid out a significant portion of the refund amounts by depositing the
funds directly into Defendant's bank account. In total, the false returns submitted to the IRS
concealed approximately $1 million of income.

Defendant's False Statements to Law Enforcement

16.      In February 2023, Defendant voluntarily participated in an interview with
prosecutors and law enforcement agents from the IRS-Criminal Investigation and Special
Inspector General for Afghanistan Reconstruction ("SIGAR") at Department of Justice Offices
in Washington, D.C., pursuant to a written proffer agreement. The proffer agreement provided
that Defendant's truthfulness was an express material condition of the agreement, and that if he
was not completely truthful and candid during the interview, his statements could be used against

him for any purpose. Defendant was orally advised at the beginning of the interview that making false statements to law enforcement could subject him to criminal charges.

17.    During the interview, Defendant falsely claimed that when he ended his time as CEO, Company-1 owed him a significant amount of reimbursements, including for purportedly having used his personal credit card to pay for Company-1's 2014 holiday party.

18.    Defendant admitted that the income reported on his 2012 to 2015 tax returns was incorrect and did not reflect the income he had actually received in those years. He claimed that he had used his bank statements to calculate his income each year, but that the false numbers he gave Tax Preparer-1 were merely a mistake.

19.    When questioned about specific information he provided to Tax Preparer-1 about his income in 2015, Defendant falsely stated that a portion of his $684,226 lump sum payment at the end of his employment with Company-1 had been intended for his former executive assistant ("Executive Assistant-1"), and that he had paid her $20,000-$30,000 dollars out of the sum. Second, Defendant falsely stated that part of his $684,226 lump sum payment had been an investment by a shareholder of Company-1 into Defendant's business enterprise. Third, Defendant falsely stated that part of his $684,226 lump sum payment had been reimbursement for business expenses he incurred on his personal credit card. But in fact, all of the $684,226 lump sum payment had been Defendant's severance from Company-1.

20.    The false statements Defendant made corroborated the false information Defendant provided to Tax Preparer-1 and had the tendency to impact the investigation by IRS, SIGAR, and DOJ into Defendant's income from Company-1 and tax liability in years 2012, 2013, 2014, and 2015.

6

## COUNTS ONE THROUGH FOUR
### (Tax Evasion for Years 2012 to 2015—26 U.S.C. § 7201)

21.    Paragraphs 1 through 20 are realleged and incorporated fully herein by reference.

22.    From at least in or about January 1, 2012, through in or about February 10, 2023, in the District of Columbia and elsewhere, Defendant, RICHARD GRAHAM FOOTE O'DONOGHUE, a resident of London, United Kingdom, willfully and knowingly did attempt to evade and defeat a substantial part of the income taxes due and owing by him to the United States for the calendar years set forth below:

| Count | Tax Year |
|-------|----------|
| 1 | 2012 |
| 2 | 2013 |
| 3 | 2014 |
| 4 | 2015 |

by committing the following affirmative acts of evasion, among others:

a)    Using corporate funds for personal expenses;

b)    Providing and causing to be provided false information to his tax return preparer for use in the preparation of U.S. Individual Income Tax Returns, Forms 1040, for each of the calendar years 2012, 2013, 2014 and 2015, and;

c)    Preparing and causing to be prepared, and signing and causing to be signed, attempting to file, and causing to be filed with the IRS a false and fraudulent U.S. Individual Income Tax Return, Form 1040, on each of the dates listed below, each filing constituting an act of evasion for the related year:

7

| Tax Year | Approximate Attempted Filing Date |
|---|---|
| 2012 | June 15, 2016 |
| 2013 | October 17, 2016 |
| 2014 | October 17, 2016 |
| 2015 | October 17, 2016 |

    d)    Making false statements at a February 2023 interview with law enforcement agents and prosecutors from the Department of Justice about information related to the computation of his tax liability in tax years 2012, 2013, 2014, and 2015.

(In violation of Title 26, United States Code, Section 7201)

**COUNTS FIVE THROUGH EIGHT**
**(Subscribing to False Tax Returns—26 U.S.C. § 7206(1))**

23.    Paragraphs 1 through 20 are realleged and incorporated fully herein by reference.

24.    On or about the dates listed below, in Dubai, United Arab Emirates and elsewhere, defendant RICHARD GRAHAM FOOTE O'DONOGHUE willfully made and subscribed and filed, caused to be filed, and attempted to file with the Internal Revenue Service, a false Form 1040, U.S. Individual Income Tax Return, for the calendar years listed below, which was verified by a written declaration that it was made under the penalties of perjury and which defendant RICHARD GRAHAM FOOTE O'DONOGHUE did not believe to be true and correct as to every material fact as listed below:

| Count | Tax Year | Approximate Attempted Filing Date | False Item(s) |
|---|---|---|---|
| 5 | 2012 | June 15, 2016 | -Line 12, business income<br>-Line 22, total income<br>-Schedule C, Line 1 gross receipts |
| 6 | 2013 | October 17, 2016 | -Line 12, business income<br>-Line 22, total income<br>-Schedule C, Line 1, gross receipts |
| 7 | 2014 | October 17, 2016 | -Line 7, wages<br>-Line 22, total income |
| 8 | 2015 | October 17, 2016 | -Line 7, wages<br>-Line 22, total income |

(In violation of Title 26, United States Code, Section 7206(1))

## COUNT NINE
### (False Statements to the Executive Branch—18 U.S.C. § 1001)

25.     Paragraphs 1 through 20 are realleged and incorporated fully herein by reference.

26.     On or about February 9 and 10, 2023, in the District of Columbia and elsewhere, defendant RICHARD GRAHAM FOOTE O'DONOGHUE willfully and knowingly made and caused to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, falsely stating, with respect to the $684,266 payment wired into his bank account in 2015:  (a) a portion was intended to be a bonus for his executive assistant; or was actually paid to his executive assistant;  (b) part of the payment was an investment by a shareholder of Company-1 into RICHARD GRAHAM FOOTE O'DONOGHUE's business enterprise; and (c) part of the payment was reimbursement because Company-1 owed him money for business expenses he incurred on his personal card.

9

(In violation of Title 18, United States Code, Section 1001)

A TRUE BILL

_____

Grand Jury Foreperson

By _____

MATTHEW M. GRAVES
UNITED STATES ATTORNEY IN AND FOR
THE DISTRICT OF COLUMBIA

STUART GOLDBERG
ACTING DEPUTY ASSISTANT ATTORNEY GENERAL, TAX DIVISION
DEPARTMENT OF JUSTICE