# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICHARD GRAHAM FOOTE O'DONOGHUE,<br><br>Defendant. | Criminal Action No. 24-566 (CKK) |

## MEMORANDUM OPINION & ORDER
(June 3, 2026)

Pending trial, Defendant Graham O'Donoghue is released on conditions that require him to obtain approval from the Court for any travel outside the continental United States. This matter comes to the Court on O'Donoghue's request to travel to the United Kingdom from June 12, 2026, to June 14, 2026, and from June 27, 2026, to June 29, 2026, for events relating to his thirteen-year-old son's graduation from school. The Court determines that any risk of flight presented by O'Donoghue's travel to the U.K. for these two short trips can be adequately mitigated by strict conditions on such travel. Accordingly, because O'Donoghue must be subject only to the "least restrictive" combination of conditions that will "reasonably assure" his appearance as required, the Court shall **GRANT** his [82] Motion to Travel.

## I. BACKGROUND

Defendant Graham O'Donoghue is charged with tax evasion, subscribing to false tax returns, and making false statements to federal agents. *See* Indictment, Dkt. No. 1. Although O'Donoghue is an American citizen, he and his immediate family—his wife and three children— reside in the United Kingdom. *See* Def.'s Mot. to Modify, Dkt. No. 39 at 1. O'Donoghue, however, is currently living in the Washington Metropolitan area while released on conditions pending trial. *See* Order Setting Conditions of Release, Dkt. No. 19. These conditions require,

1

among other things, that O'Donoghue surrender his passport and seek approval from the Court for any travel outside the continental United States. *Id.*

In September 2025, O'Donoghue moved the Court to modify his conditions of release to allow him to travel to the United Kingdom for a little over a month. Dkt. No. 39. The Government opposed O'Donoghue's request. Dkt. No. 41. The Court ultimately denied O'Donoghue's request, finding that O'Donoghue would present a flight risk if permitted to travel to the U.K. unsupervised for an extended period and that no combination of conditions could sufficiently mitigate his risk of flight. Mem. Op. & Order, Dkt. No. 49.

O'Donoghue now moves the Court to modify his conditions of release to allow him to travel to the U.K. on two occasions so that he can attend events associated with his thirteen-year-old son's graduation from preparatory school. *See* Def.'s Mot., Dkt. No. 82. Specifically, O'Donoghue requests permission to travel to the U.K. from June 12 to June 14 so that he can attend his son's school's "Sports Day and Leavers' Picnic," and from June 27 to June 29 so that he can attend his son's graduation ceremony. *Id.* at 1. The Government again opposes O'Donoghue's request, arguing that O'Donoghue's proposed travel "poses the same risks that it did last year" and that no combination of conditions could reasonably assure his appearance back in the United States. Gov't's Opp'n, Dkt. No. 87 at 1.

## II. LEGAL STANDARD

A defendant awaiting trial must be released on personal recognizance or an unsecured appearance bond unless there is a judicial determination that such release would not reasonably assure the appearance of the defendant as required or would endanger the safety of any other person or the community. 18 U.S.C. § 3142(b). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez,* 919 F.3d 546, 550 (D.C. Cir. 2019). A determination that a defendant poses a flight risk or a

2

danger to the community must be supported by a preponderance of the evidence, and it must be based on an "individualized assessment" rather than "global judgments." *Id.* at 551; *United States v. Irizarry*, No. 22-3028, 2022 WL 2284298, at *1 (D.C. Cir. June 24, 2022).

A pretrial defendant deemed to be a flight risk must still be released on the "least restrictive" combination of conditions that will "reasonably assure" the defendant's appearance. 18 U.S.C. § 3142(c)(1)(B). Following a defendant's release on such conditions, a court may "at any time" amend the conditions "to impose additional or different conditions of release." *Id.* § 3142(c)(3).

### III. ANALYSIS

The Court has already determined that O'Donoghue presents a flight risk. *See* Order Setting Conditions of Release, Dkt. No. 19; Mem. Op. & Order, Dkt. No. 49. That is why O'Donoghue is currently released on conditions. 18 U.S.C. § 3142(c)(1)(B). The question for the Court here is whether the "least restrictive" combination of conditions necessary to "reasonably assure" O'Donoghue's appearance would permit O'Donoghue to travel to the U.K. from June 12– 14 and June 27–29 to participate in his son's graduation.

The Court previously concluded that no combination of conditions could reasonably assure O'Donoghue's appearance if he were to travel to the U.K. for over a month unsupervised. Mem. Op. & Order, Dkt. No. 49. O'Donoghue argues that his present request to travel to the U.K. is distinguishable from his prior request because: (i) he has remained in compliance with his conditions of release for an additional seven months; (ii) he is no longer employed by a company with offices in Switzerland and no longer has any immigration status in Switzerland; (iii) his present request to travel involves two three-day trips for specific events rather than a five-week visit; and (iv) his continued inability to return to the U.K. has imposed a significant hardship on his family. Def.'s Mot., Dkt. No. 82 at 2–3.

3

The Court agrees that O'Donoghue's present request to travel to the U.K. is distinguishable from his prior request. Although compliance with conditions of release is to be expected, O'Donoghue's continued compliance with his conditions of release has built trust between O'Donoghue and the Court. O'Donoghue's severing of his Switzerland connection is also important—while this does not prevent O'Donoghue from using his passport to enter Switzerland, it does significantly limit O'Donoghue's ability to live in Switzerland, which in turn limits his incentive to flee to Switzerland. And regardless, O'Donoghue has offered to execute an irrevocable waiver of extradition. Furthermore, and perhaps most importantly, O'Donoghue's present request to travel to the U.K. concerns two short trips for specific events rather than one long trip for a generalized reason. This mitigates the Government's concerns regarding its inability to monitor O'Donoghue while he is abroad.

Allowing a defendant released on conditions to travel internationally will always raise concerns about monitoring and enforcement. *See Irizarry*, 2022 WL 2284298, at *2 (D.C. Cir. June 24, 2022) (Wilkins, J., dissenting) ("International travel restrictions are imposed due to the simple fact that once the defendant leaves the United States, the District Court, the Pretrial Services Agency, and U.S. law enforcement lose jurisdiction over him."). But determining whether a defendant should be permitted to travel abroad requires an "individual assessment" beyond these "global judgments." *Id.* at *1.

To support its individual assessment, the Government incorporates by reference the risk factors that were relevant to O'Donoghue's prior request to travel and argues that O'Donoghue's credibility cannot support a promise to return. As mentioned above, however, the circumstances of O'Donoghue's present request are distinguishable from his prior request and therefore present a different calculation of risk. O'Donoghue has built trust with the Court by continuing to comply

4

with his conditions, severed his ties to a non-extradition country in Switzerland, and presented a tailored request to travel for a short period of time so that he can participate in a significant, singular event with his family.

O'Donoghue also represents that he will voluntarily execute an irrevocable waiver of extradition as a condition of his requested travel. By executing such a waiver, O'Donoghue would forgo any claim against extradition by any foreign country, including foreign countries that do not have an extradition treaty with the United States. This gives the Court confidence that O'Donoghue does not intend to use his requested travel as an opportunity to flee. An irrevocable waiver of extradition would not only remove any potential basis O'Donoghue may use to claim protection from a foreign country if he were to flee, but it would also make living and working in a foreign country nearly impossible. Furthermore, if O'Donoghue were to flaunt his irrevocable waiver of extradition, then he would likely open himself up to additional charges that would continue to follow him wherever he went.

Additional criminal charges would not be the only thing following O'Donoghue if he were to flee. Using his thirteen-year-old son's graduation as a vehicle to break the law would violate much more than the trust of the Court or the Government, it would violate the trust of his family. O'Donoghue's flight would rob his family of a celebratory milestone and replace it with conflict and uncertainty. It would also isolate O'Donoghue from his family, as he would be forced to live apart from them while endlessly trying to evade arrest. The record does not warrant an assumption that O'Donoghue is willing to cause his family such distress or estrange himself from them. This too mitigates his risk of flight.

The Court is not blind to the Government's concerns about O'Donoghue's credibility. The Government highlights the fact that, in a declaration submitted in support of his previous request

to travel to the U.K., O'Donoghue swore that he did not tell his initial probation officer that he could not remember his own cell phone number even though contemporaneous evidence appeared to show otherwise. *See* Gov't's Opp'n, Dkt. No. 87 at 2. The Government also argues that O'Donoghue attempted to stop a U.K. court from producing documents sought pursuant to a Mutual Legal Assistance Treaty ("MLAT") request by arguing that he was not the primary focus of the DOJ. *Id.* The Government frames these as examples of O'Donoghue's willingness to make misrepresentations to judicial bodies—but that is not the only way to look at these two events. O'Donoghue's sworn declaration could have been based on misremembering likely stressful events from years ago; it is also possible that the Government's evidence (an email from the probation officer asking for O'Donoghue's cell phone number) would not contradict O'Donoghue's declaration if subjected to further scrutiny. As for the MLAT request, it is difficult to judge the substance of the Government's argument because the Government does not cite to the evidence it appears to rely on.

Regardless, any claimed issues with O'Donoghue's credibility must be viewed in context. The Government's examples take root in events that happened years ago. From the Court's perspective, O'Donoghue has complied with his conditions of release without significant issue. Furthermore, O'Donoghue's current request to travel places less weight on his credibility than his prior request did. The Court will not be asking O'Donoghue to self-monitor for over a month while living and working abroad; rather, the Court will be asking O'Donoghue to return to the United States after two weekends in which he will be attending events for his son's graduation.

The passage of time and the narrow scope of O'Donoghue's present request calls for a refreshed analysis of his credibility. Upon conducting that analysis, the Court determines that the

6

Government's concerns with O'Donoghue's credibility should not bar his requested travel under strict conditions.

## IV. CONCLUSION

The Bail Reform Act's mandate that O'Donoghue be released subject to the "least restrictive" combination of conditions that will "reasonably assure" his appearance calls for the Court to **GRANT** his [82] Motion to Travel.  18 U.S.C. § 3142(c)(1)(B).  Accordingly, it is hereby **ORDERED** that O'Donoghue shall be permitted to travel to the U.K. from June 12, 2026, to June 14, 2026, and from June 27, 2026, to June 29, 2026, subject to the following conditions:

- ❖ O'Donoghue shall post a $1.2 million secured appearance bond, collateralized by his father's assets.
- ❖ O'Donoghue shall only book non-stop flights and shall submit his itinerary to his Pretrial Services officer before traveling.  O'Donoghue's travel shall be restricted to the United Kingdom.
- ❖ O'Donoghue shall surrender his U.S. passport within 12 hours of arrival in the U.K. to the U.S. embassy in London and confirm this surrender with his Pretrial Services officer.  O'Donoghue shall arrange for such surrender and return before traveling.
- ❖ O'Donoghue shall execute an irrevocable waiver of extradition and file such waiver with the Court by **no later than June 5, 2026**.

**SO ORDERED.**

**Dated:**  June 3, 2026

COLLEEN KOLLAR-KOTELLY
United States District Judge